IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KANG HAGGERTY LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BAXTER MCLINDON HAYES, JR., et al. | : | NO. 17-1295 |

### MEMORANDUM

**Padova, J.**                                                                                                                 **February 9, 2023**

Plaintiff Kang Haggerty LLC, a law firm, has brought this breach of contract action against its former clients, Defendants Baxter McLindon Hayes, Jr. and Utilipath Holdings, LLC ("Holdings") asserting that Hayes and Holdings failed to pay Kang Haggerty certain hourly fees and a contingency fee that Kang Haggerty alleges it is owed pursuant to an engagement agreement among the parties. Hayes and Holdings have filed a Motion for Partial Summary Judgment seeking the entry of judgment in their favor with respect to the entirety of Kang Haggerty's claims asserted in the Amended Complaint.[1] For the reasons that follow, the Motion is granted in part, denied in part, and dismissed as moot to the extent it seeks summary judgment on Kang Haggerty's claim for unjust enrichment, which has been withdrawn.[2]

### I. FACTUAL AND PROCEDURAL BACKGROUND

The summary judgment record contains the following material facts. On April 29, 2014, Hayes and Holdings retained Kang Haggerty (then known as Kang Haggerty & Fetbroyt LLC) to represent them alongside Margaret Behringer Maloney, Esquire, of Maloney Legal in connection

---

[1] Hayes and Holdings do not move for summary judgment on their own counterclaims.

[2] The Amended Complaint originally asserted a claim for breach of contract in Count I and a claim for unjust enrichment in Count II. However, Kang Haggerty's claim for unjust enrichment was withdrawn by agreement of the parties on December 21, 2022. (See Docket No. 124.) Thus, the only remaining claim in the Amended Complaint is a claim for breach of contract.

with NewSpring Mezzanine Capital II, L.P. v. Hayes, Civ. A. No. 14-1706 (E.D. Pa.) and one other lawsuit, pursuant to the terms set forth in an engagement letter dated April 26, 2014 (the "Engagement Letter").  (See Mot. Ex. D.)  Hayes and Holdings, as well as Hayes's two sons, were co-defendants in these two lawsuits.[3]  (See id. at 4 of 5.)  Kang Haggerty, Maloney, and Oliver D. Griffin, Esquire, of Kutak Rock, LLP, who was then counsel for Hayes's sons in the underlying litigation, discussed the interests of their clients in the underlying litigation and concluded that Hayes, Holdings, and Hayes's sons shared a common interest in the two cases.  (See id.)  Hayes, Holdings, and Hayes's sons therefore entered into a joint defense and common interest agreement (the "Joint Defense Agreement") in which they agreed that the attorneys would coordinate their representation of their respective clients.  (Mot. Ex. H.)

In the Joint Defense Agreement, the attorneys and clients agreed to the following material provisions:

> Kutak Rock, LLP shall serve as coordinating counsel for the Parties in connection with the defense of the Litigation with primary responsibility for (i) the collection and management of shared Common Interest Materials, including all documents which may be subject to discovery in the Litigation . . . , (ii) *management and administration of all hard costs incurred for the benefit of the Parties in the Litigation, including without limitation, litigation support services, experts and local counsel ("Shared Expenses") all of which the Parties agree shall be shared 2/3 by the Parties which are clients of Kutak Rock, LLP and 1/3 by the Parties that are clients of Kang Haggerty & Fetbroyt LLC,* and (iii) formulating recommendations as to legal strategies for the defense of the Litigation and assertion of legal rights on behalf of the Parties.

(Mot. Ex. H ¶ 8 (emphasis added).)  Kang Haggerty discussed the Joint Defense Agreement in the Engagement Letter which contains the following relevant language:

---

[3] The underlying litigation arose from the sale of Utilipath, LLC, a company formerly owned by Hayes and his two sons.  See NewSpring, Civ. A. No. 14-1706 (Docket No. 1) (E.D. Pa. Mar. 21, 2014).  Hayes and Holdings maintain in this action that Holdings is/was a shell corporation created by Hayes and his sons for the purpose of selling Utilipath, LLC.  (See Defs.' Am. Statement of Material Facts at 2 n.2.)

2

> In general, the amount of legal fees/costs between a case with a single defendant and the same case with two defendants would be comparable. That is, the increase in the amount of legal fees and costs due to the addition of another defendant would be, in general, not substantial. For example, you would need to take all necessary steps in the above lawsuits . . . even if you were the only defendant. This is also true for your sons—i.e., they would need to take all necessary steps in the lawsuits even if they were the only defendants. Out of fairness to you (and your sons), however, Mr. Griffin, Ms. Maloney, and [Kang Haggerty] agreed that the parties should divide up legal work (approximately, 1/3 by Ms. Maloney and [Kang Haggerty] and 2/3 by your sons' lawyers). Similarly, the costs would be shared 1/3 by you and 2/3 by your sons.

(Mot. Ex. D at 4 of 5.)

Hayes and Holdings agreed to pay Kang Haggerty for its services pursuant to a "hybrid fee arrangement," in which they were responsible for an agreed-upon hourly fee, reimbursement for "hard costs," and a contingency fee on any recovery from their counterclaims and crossclaims. (Id. at 3 of 5.) Hayes and Holdings were to pay monthly invoices and Kang Haggerty could impose a monthly interest charge for late payments. (Id.)

From May 2014 to February 2015, Kang Haggerty represented Hayes and Holdings in the NewSpring matter by, inter alia, engaging in motion practice and filing counterclaims and crossclaims. See, e.g., NewSpring, Civ. A. No. 14-1706 (Docket Nos. 16, 59, and 97) (E.D. Pa. May 30, Sept. 19, Dec. 17, 2014). As early as August 2014, however, Hayes began questioning Kang Haggerty with respect to the manner and extent to which it was splitting its legal fees among Hayes and his sons. (See Mot. Ex. K at 2 of 8.) Hayes's questions and complaints regarding "payment issues" continued over several months in a series of email exchanges, with Hayes ultimately accusing Kang Haggerty of billing him for "significantly more than [his] 1/3 commitment." (Mot. Exs. G, I, J at 2 of 12, and L at 2 of 7.) By mid-December 2014, after paying Kang Haggerty $294,390.17 in legal fees and costs, Hayes and Holdings stopped paying Kang Haggerty's invoices. (Pl.'s Resp. Ex. B ¶¶ 16, 30; Def.'s Am. Statement of Material Facts Ex.

3

AA.) In January 2015, Hayes directed Kang Haggerty to stop all work on his behalf, unless such work was approved by him in advance. (See Pl.'s Resp. Ex. J at 4 of 4.)

As a result of "irreconcilable differences in the representation, as well as unpaid invoices," Kang Haggerty withdrew from its representation of Hayes and Holdings in March 2015. (Pl.'s Resp. Exs. B. ¶ 25 and L; Am. Compl. Ex. C); see also NewSpring, Civ. A. No. 14-1706 (Docket Nos. 144-45) (E.D. Pa. Mar. 20, 2015). On March 13, 2017, almost two years after Kang Haggerty's withdrawal, the NewSpring case settled, and the case was closed.[4] See NewSpring, Civ. A. No. 14-1706 (Docket No. 352) (E.D. Pa. Mar. 13, 2017).

The Amended Complaint initially contained two counts. Count I asserted a claim for breach of contract and Count II asserted a claim for unjust enrichment. On December 21, 2022, however, Count II was withdrawn. Thus, Kang Haggerty's only remaining claim is for breach of contract. In Count I, Kang Haggerty seeks (1) payment of its outstanding invoices in the amount of $94,032.79 plus interest, and (2) payment of the contingency fee it believes it is owed from the settlement of the NewSpring action. (See Pl.'s Resp. Ex. B ¶¶ 31, 33.) Hayes and Holdings move for summary judgment in their favor with respect to Kang Haggerty's claims for payment of the unpaid invoices and unpaid contingency fee.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

---

[4] It is our understanding that Hayes and Holdings received some funds in the NewSpring settlement. The amount of the funds they recovered is not part of the summary judgment record.

factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In ruling on a summary judgment motion, we "construe the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion." Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).

### III.  DISCUSSION

#### A.  Unpaid Invoices

Hayes and Holdings move for summary judgment on Kang Haggerty's breach of contract claim related to its unpaid invoices on the grounds that their failure to pay Kang Haggerty's invoices after November 2014 did not breach the Engagement Letter because, pursuant to their

one-third payment commitment, Kang Haggerty is not owed any outstanding funds.  Kang Haggerty maintains that the summary judgment record establishes that Hayes and Holdings breached the Engagement Letter by failing to pay its invoices from December 2014 to March 2015 and that it is owed at least $94,032.79 in unpaid invoices.  (See Pl.'s Resp. Ex. B ¶ 31.)

"Under Pennsylvania law, 'three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[ ] (3) resultant damages." Doe v. Univ. of Scis., 961 F.3d 203, 211 (3d Cir. 2020) (alterations in original) (footnote omitted) (quoting Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016)).  Here, the parties agree that a valid contract—the Engagement Letter—existed among them.  They disagree, however, as to the duties that Agreement imposed on the parties and whether a breach of those duties has occurred.

In ascertaining the duties that a contract imposes and whether they have been breached, the court must first interpret the terms of the contract.  "The paramount goal of contract interpretation is to determine the intent of the parties." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009) (quoting Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc., 273 F.3d 332, 335 (3d Cir. 2001)).  However, "a contract that is unambiguous on its face must be interpreted according to the natural meaning of its terms, unless the contract contains a latent ambiguity." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 96 (3d Cir. 2001).  A latent ambiguity arises when a party introduces extrinsic evidence of "'extraneous or collateral facts'" which support a reasonable, "alternative meaning of a specific term or terms contained in the contract." Id. at 93, 96 (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995)).  Where the court determines that a latent ambiguity exists, the interpretation

of that ambiguity presents a question of fact reserved for a jury. Id. at 94 (citing Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011, 1013-14 (3d Cir. 1980)).

The Engagement Letter contains three relevant, material provisions: (1) "[i]n general, the amount of *legal fees/costs* between a case with a single defendant and the same case with two defendants would be comparable;" (2) accordingly, "[o]ut of fairness" to Hayes and his sons, Kang Haggerty, Maloney, and Griffin agreed to "divide up *legal work* (approximately, 1/3 by Ms. Maloney and [Kang Haggerty] and 2/3 by [Hayes's] sons' lawyers);" and (3) the attorneys also agreed that "*costs* would be shared 1/3 by [Hayes and Holdings] and 2/3 by [Hayes's] sons." (Mot. Ex. D at 4 of 5 (emphasis added).) The Joint Defense Agreement further provides that Griffin would lead the "management and administration of all hard costs incurred . . . in the Litigation, including without limitation, litigation support services, experts and local counsel . . . all of which" the parties agreed would be "shared 2/3 by the [sons] and 1/3 by [Hayes and Holdings]."[5] (Mot. Ex. H ¶ 8.)

The parties maintain that the Engagement Letter is clear and unambiguous on its face, yet they proffer opposing interpretations of its terms. In support of their Motion, Hayes and Holdings argue that the Engagement Letter clearly provides that "fees and costs for the representation were to be divided proportionally" and Kang Haggerty "was entitled only to 1/3 of the overall legal fees accrued under the Engagement Letter and . . . the incorporated Joint Defense Agreement." (Defs.' Mem. at 6, 7-8.) In support of this interpretation, Hayes and Holdings cite the Engagement Letter

---

[5] The parties do not dispute that the Engagement Letter incorporated the Joint Defense Agreement by reference. See Standard Bent Glass Corp v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003) (holding that, under Pennsylvania law, "[i]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship").

and extrinsic evidence, including Hayes's deposition testimony and his emails to Kang Haggerty. (See Mot. Exs. C at 37-40, G, I, J at 2 of 12, K at 2 of 8, and L at 2 of 7.)  Hayes's testimony and emails indicate his interpretation of the Engagement Letter's work and cost-sharing terms. Specifically, they show that he intended to be responsible for only one-third of the total expenses incurred in the underlying litigation.  (See Mot. Exs. L at 2 of 7 and J at 2 of 12.)

Kang Haggerty, however, argues that the Engagement Letter clearly states that it would complete "<u>approximately</u> 1/3 of the <u>work</u>" required for the representation of Hayes, Holdings, and Hayes's sons in the underlying litigation, but that Hayes and Holdings would be responsible for 100 percent of the fees associated with Kang Haggerty's share of the work.  (Pl.'s Resp. at 5-6.) In support of this interpretation, Kang Haggerty relies on the Engagement Letter and the Joint Defense Agreement, as well as extrinsic evidence, including declarations from Griffin and Edward Kang, the attorney who led Kang Haggerty's representation of Hayes and Holdings in the underlying litigation.  (Pl.'s Resp. Exs. A ¶ 9 and B ¶ 10.)  Kang Haggerty's submissions show that the attorneys involved in the underlying litigation never contemplated that they would be bound to divide their fees among their respective clients, and, in fact, the attorneys never implemented any practice that would have allowed them to aggregate and split their fees.  (Pl.'s Resp. at 5 (citing Exs. A ¶ 9 and B ¶ 10)).)  According to Kang Haggerty, the attorneys merely intended to coordinate their legal work and divide up the hard costs associated with that work. (See id. at 5-6.)

These competing interpretations of the Engagement Letter hinge on the meaning of the terms "legal work."  (Mot. Ex. D at 4 of 5.)  Whereas Hayes and Holdings assert that "legal work" refers to the costs *and* fees associated with the litigation, Kang Haggerty maintains that "legal work" refers only to actual labor and the hard costs associated with that labor.  (Id.)  Based on the

8

text of the Engagement Letter and the Joint Defense Agreement, as well as the parties' submissions of extrinsic evidence, we conclude that Kang Haggerty and Hayes and Holdings have produced reasonable, alternative meanings of the terms "legal work." Bohler-Uddeholm Am., Inc., 247 F.3d at 93, 96 (quoting Duquesne Light Co., 66 F.3d at 614).  Consequently, we conclude that the Engagement Letter contains a latent ambiguity which cannot be resolved on a motion for summary judgment and which precludes at this stage our determination of whether a breach of the Engagement Letter has occurred. Id. at 94 (citing Mellon Bank, N.A., 619 F.2d at 1011, 1013-14). Accordingly, the Motion is denied to the extent it seeks summary judgment on Kang Haggerty's breach of contract claim related to the unpaid invoices.

      B.      Unpaid Contingency Fee

           1.    The Termination Clause

Hayes and Holdings move for summary judgment on Kang Haggerty's breach of contract claim related to the contingency fee element of the Engagement Letter on the grounds that, inter alia, they have not breached the Engagement Letter's termination clause (the "Termination Clause"). The Termination Clause provides the following material terms:

> If, following [Hayes and Holdings'] termination of the engagement with [Kang Haggerty], [Hayes and Holdings] receive any recovery in any of the matters, whether by settlement, verdict, judgment, or otherwise, [Hayes and Holdings] agree to pay [Kang Haggerty] either [its] pro rata share of the recovery or the *quantum meruit* value of [its] time and efforts expended in this case, whichever is greater.

(Mot. Ex. D at 4 of 5.)  Kang Haggerty asserts that Hayes and Holdings have breached the Termination Clause by failing to pay Kang Haggerty either (1) its "pro rata share of the recovery" or (2) "the *quantum meruit* value" of its work when they recovered some funds in connection with the NewSpring case after they terminated their engagement of Kang Haggerty in connection with that case.  (Id.)  Hayes and Holdings argue that they are entitled to summary judgment in their

favor on this claim because Hayes and Holdings did not terminate the engagement with Kang Haggerty and because they do not owe Kang Haggerty any additional funds.

### a. Circumstances of Termination

Hayes and Holdings assert that Kang Haggerty cannot establish that they breached the Termination Clause because Kang Haggerty, rather than Hayes and Holdings, terminated the engagement by withdrawing from the representation in March 2015.  See NewSpring, Civ. A. No. 14-1706 (Docket Nos. 144-45) (E.D. Pa. Mar. 20, 2015).  Therefore, Hayes and Holdings argue, a precondition to Kang Haggerty's recovery under the terms of the Termination Clause—*Hayes and Holdings'* termination of the representation—has not occurred.  (Mot. Ex. D at 4 of 5.)  Kang Haggerty maintains that there is a genuine issue of material fact regarding whether it was terminated by Hayes and Holdings and relies on record evidence that it withdrew from the NewSpring matter only after Hayes and Holdings terminated the engagement by (1) directing Kang Haggerty to stop all work on their case without advance approval, (2) failing to communicate with Kang Haggerty, and (3) failing to pay Kang Haggerty's invoices.  (See Pl.'s Resp. Exs. J at 4 of 4 and L.)  While the record is clear that Kang Haggerty withdrew from the representation in March 2015, Kang Haggerty has shown that a genuine dispute of material fact remains as to whether Hayes and Holdings had effectively terminated the engagement by the time of Kang Haggerty's withdrawal.  We therefore deny the Motion with respect to Hayes's and Holdings' argument that they are entitled to the entry of summary judgment on Kang Haggerty's claim for a breach of the Termination Clause on the grounds that they did not terminate the engagement.

### b. Pro Rata Share

Hayes and Holdings also argue that Kang Haggerty is not entitled to payment of either its pro rata share of the NewSpring recovery or the quantum meruit value of its services because (1)

Kang Haggerty has no contractual claim to a pro rata share of the recovery and (2) Kang Haggerty has already been paid the quantum meruit value of its services. Here, Kang Haggerty appears to concede that it "*might* be limited to the quantum meruit value of the contingency fee portion of its claim," but it asserts that the quantum meruit value remains in dispute. (Pl.'s Resp. at 9.)

Insofar as Kang Haggerty still seeks a "pro rata share" of the NewSpring recovery, Pennsylvania courts will not require a client to pay a contingency fee to its former attorney where the "attorney-client relationship [terminates] prior to the occurrence of the contingency." Angino & Rovner v. Jeffrey R. Lessin & Assocs., 131 A.3d 502, 508-10 (Pa. Super. Ct. 2016). Rather, federal courts applying Pennsylvania law have held that "any compensation the attorney might recover against the [former] client is limited to quantum meruit." Feingold v. Graff, Civ. A. No. 12-1090, 2012 WL 2400998, at *3 n.5 (E.D. Pa. June 26, 2012), aff'd, 516 F. App'x 223 (3d Cir. 2013) (citing Mager v. Bultena, 797 A.2d 948, 956-57 (Pa. Super. Ct. 2002); Hiscott & Robinson v. King, 626 A.2d 1235, 1237 (Pa. Super. Ct. 1993)); see also In re Thorpe, 602 B.R. 906, 917 (Bankr. E.D. Pa. 2019) ("While the termination of the contract by [the client] create[s] an immediate right in [the law firm] to compensation for all work performed and costs incurred pursuant to that contract, that right include[s] **only** quantum meruit compensation" (quoting Mager, 797 A.2d at 957)). Therefore, pursuant to Pennsylvania law, Kang Haggerty cannot establish that Hayes and Holdings breached the Termination Clause by failing to pay it its pro rata share of the NewSpring recovery because Hayes and Holdings are not required to pay that amount. Accordingly, we grant Hayes and Holdings' Motion to the extent it seeks to limit Kang Haggerty's recovery for a breach of the Termination Clause to the quantum meruit value of its services.

c. <u>Quantum Meruit Value</u>

Hayes and Holdings argue that they are entitled to summary judgment with respect to Kang Haggerty's breach of contract claim relating to the quantum meruit value of its services because Kang Haggerty has already been paid "a reasonable value for its services." (Defs.' Mem. at 9.) Quantum meruit, meaning "as much as deserved," entitles a plaintiff to "[the] reasonable value of services rendered." <u>Mulholland v. Kerns</u>, 822 F. Supp. 1161, 1169 (E.D. Pa. 1993) (quotation omitted). Determining the "appropriate attorney's fee award" on a quantum meruit basis, however, requires an "exacting analysis," in which courts consider various factors, including:

> "the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; . . . the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question."

<u>Joseph Q. Mirarchi Legal Servs., P.C. v. Thorpe</u>, Civ. A. No. 19-3102, 2020 WL 2030036, at *6-7 (E.D. Pa. Apr. 28, 2020) (alteration in original) (quoting <u>In re LaRocca Estate</u>, 246 A.2d 337, 339 (Pa. 1968)). Moreover, "a *quantum meruit* recovery need not be limited to an hours and expenses analysis." <u>Angino & Rovner</u>, 131 A.3d at 511.

Here, there is record evidence that Hayes and Holdings paid Kang Haggerty nearly $300,000 for its services between May 2014 and December 2014, pursuant to the Engagement Letter's hybrid fee arrangement. (Pl.'s Resp. Ex. B ¶ 30; Def.'s Am. Statement of Material Facts Ex. AA.) Nevertheless, Kang Haggerty has submitted evidence in support of its argument that the quantum meruit value of its services exceeds the amount already paid by Hayes and Holdings. Specifically, Kang Haggerty has submitted evidence showing that (1) it charged Hayes and Holdings a reduced hourly rate for its work, due to the hybrid nature of the fee agreement; (2) it spent a great deal of time and effort drafting and amending counterclaims and crossclaims in the

12

NewSpring matter; (3) the NewSpring matter was particularly complex because discovery in that case involved over one million documents; and (4) Kang Haggerty defeated a motion to dismiss the amended counterclaims and crossclaims in the NewSpring matter. (See Pl.'s Resp. Exs. B ¶ 20, D, E, F, and G; Mot. Exs. C at 75 and D at 3 of 5; Supp. to Mot. (Docket No. 108) Ex. E at 38 of 46.) Under these circumstances, we conclude that there is a genuine issue of material fact as to the reasonable value of the services Kang Haggerty rendered and, accordingly, whether it is entitled to additional payment under the Termination Clause. Thus, we deny the Motion for Summary Judgment to the extent Hayes and Holdings argue that Kang Haggerty has no contractual claim for payment of the quantum meruit value of its services.

    2. Estoppel

Hayes and Holdings also argue that they are entitled to summary judgment as to Kang Haggerty's claim for payment of the quantum meruit value of its services because that claim is barred by either collateral or judicial estoppel based on Kang Haggerty's representations to the Philadelphia County Court of Common Pleas in Kang Haggerty & Fetbroyt LLC v. Haines, et al., Case No. 170400852 (Phila. Cnty. Ct. Com. Pls.). In the Court of Common Pleas action, Kang Haggerty alleged that its successor counsel in the NewSpring matter, Clifford E. Haines, was in possession of the NewSpring settlement fund and it sought to obtain a portion of that settlement fund from Haines. See id. (Second Am. Compl.) (Apr. 27, 2018). In relevant part, Kang Haggerty asserted claims for (1) "an attorney charging lien" on the NewSpring settlement proceeds and (2) quantum meruit relief on the grounds that Kang Haggerty conferred a benefit on Haines through its contributions to the NewSpring case and it "would be inequitable and unjust" for Haines to retain that benefit without payment to Kang Haggerty. Id. (Second Am. Compl. ¶¶ 27, 39) (Apr. 27, 2018). During a bench trial on those claims, Kang Haggerty stated on the record that it would

not assert a claim in this action for any portion of the NewSpring settlement fund.[6] (Supp. to Mot. Ex. E at 43-44 of 46.) Kang Haggerty also wrote in a Court of Common Pleas filing that it "seeks recovery only for unpaid hourly fees and costs" in this federal action. (Mot. Ex. F at 73 of 79.) Under these circumstances, Hayes and Holdings argue that the doctrines of collateral estoppel and/or judicial estoppel bar Kang Haggerty from seeking payment of the quantum meruit value of its services here.

          a. Collateral Estoppel

"Collateral estoppel, also known as issue preclusion, 'bars relitigation of issues adjudicated in a prior action.'" Keiser v. Matamoras Cmty. Church, 66 F. App'x 358, 360 (3d Cir. 2003) (quoting Swineford v. Snyder Cnty., 15 F.3d 1258, 1266 (3d Cir. 1994)). "The policy behind the rule is that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" Id. (quoting Swineford, 15 F.3d at 1266). Pursuant to Pennsylvania law, collateral estoppel applies when the party asserting collateral estoppel proves that the following circumstances exist:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Morgan v. Fiorentino, 811 F. App'x 798, 804 (3d Cir. 2020) (quoting Walker v. Horn, 385 F.3d 321, 337 (3d Cir. 2004)); see also Shin Da Enterprises Inc. v. Yong, Civ. A. No. 21-3384, 2022 WL 15524952, at *7 (E.D. Pa. Oct. 27, 2022) ("[T]he party seeking to collaterally estop . . . bear[s]

---

[6] Specifically, counsel for Kang Haggerty in the Court of Common Pleas action stated, "I am not going to be asserting a claim for the contingency fee element of this against Mr. Hayes because he doesn't have it. He didn't get it. . . . The fund went to the attorney, so our claim is against the attorney." (Supp. to Mot. Ex. E at 43-44 of 46.)

the burden of proof as to each element." (citing Magoni-Detwiler v. Pennsylvania, 502 F. Supp. 2d 468, 474 (E.D. Pa. 2007))). "Federal courts must give a state court judgment the same preclusive effect as would the courts of that state." Swineford, 15 F.3d at 1266 (citations omitted). Generally, however, courts "are granted 'broad discretion' to determine when collateral estoppel should be applied." WM High Yield Fund v. O'Hanlon, Civ. A. No. 04-3423, 2013 WL 3230667, at *2 n.11 (E.D. Pa. June 27, 2013) (quoting Parkland Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)).

Here, the relevant prior adjudication is the Court of Common Pleas action in which Judge Kenneth J. Powell, Jr. denied all of Kang Haggerty's claims for relief, including its claims for a charging lien and quantum meruit recovery, without issuing findings of fact or conclusions of law, but rather by making a general finding in favor of Clifford Haines and against Kang Haggerty.[7] Kang Haggerty & Fetbroyt LLC v. Haines, et al., Case No. 170400852 (Order) (Phila. Cnty. Ct. Com. Pls. May 7, 2019). While at first blush Judge Powell's denial of Kang Haggerty's claims for a charging lien and quantum meruit recovery suggests that Kang Haggerty cannot obtain payment of a quantum meruit value here, the doctrine of collateral estoppel requires us to analyze the legal issues involved in that prior adjudication. When we undertake this analysis, it becomes clear that we cannot apply collateral estoppel on the basis of Judge Powell's summary denial of Kang Haggerty's claims. For example, before a charging lien may be imposed, a plaintiff must prove that the following circumstances exist:

---

[7] Pursuant to Pennsylvania Rule of Civil Procedure 1038, a Pennsylvania Court of Common Pleas judge need not provide findings of fact or conclusions of law at the close of a bench trial. See Pa. R. Civ. P. 1038(b). Rather, "[t]he decision of the trial judge may consist only of general findings as to all parties," so long as it "dispose[s] of all claims for relief." Id.; see also Est. of Meyers, 281 A.3d 1088 (table), 2022 WL 2298001, at *4 n.4 (Pa. Super. Ct. June 27, 2022) ("[T]he trial court [is] not required to make findings of fact and conclusions of law. It [is] only required to dispose of all claims.").

> (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

Austin v. Thyssenkrupp Elevator Corp., 254 A.3d 760, 764-65 (Pa. Super. Ct. 2021) (quoting Recht v. Urban Redev. Auth., 168 A.2d 134, 138-39 (Pa. 1961)) (additional citation omitted). The record shows that Judge Powell denied Kang Haggerty's claim for a charging lien because Kang Haggerty failed to prove one or more of the above elements. The record does not show, however, which element(s) Kang Haggerty failed to prove. Drawing all inferences in favor of Kang Haggerty, as we must, we assume that Kang Haggerty merely failed to prove the third element— that "it was agreed that [Kang Haggerty] look to the fund rather than [Hayes and Holdings] for [its] compensation." Id. (quoting Recht, 168 A.2d at 138-39). Kang Haggerty's failure to prove that third element in the Court of Common Pleas does not preclude its contractual claim for quantum meruit payment in this action because the Termination Clause says nothing of where Kang Haggerty must look for its compensation.

In the same way, we cannot conclude that Judge Powell's denial of Kang Haggerty's claim for quantum meruit relief against Haines precludes its contractual claim for quantum meruit payment here. Before a court will impose quantum meruit relief, a plaintiff must prove the following: "(1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Shafer Elec. & Constr. v. Mantia, 96 A.3d 989, 993 (Pa. 2014) (alteration in original) (quoting Durst v. Milroy Gen. Contracting, Inc., 52 A.3d 357, 360 (Pa. Super. Ct. 2012)). Accordingly, we know that Judge

16

Powell denied Kang Haggerty's claim for quantum meruit recovery because it failed to prove one or more of those three elements, but, as is the case with Kang Haggerty's claim for a charging lien, it is impossible to discern which element(s) Judge Powell concluded Kang Haggerty failed to prove. Consequently, we can only conclude at this stage that Kang Haggerty failed to prove an element that is immaterial to the claim before us now, i.e., the third element—inequitable circumstances arising from *Haines's* failure to pay Kang Haggerty for its services—which would not preclude a finding in this case "that it would be inequitable for [*Hayes and Holdings*] to retain [a] benefit without payment of value." Id. (quoting Durst, 52 A.3d at 360).

Under these circumstances, it is "apparent that the first requirement for collateral estoppel is not met here." Walker, 385 F.3d at 337. Hayes and Holdings have not and cannot identify any specific *issue* that was actually decided by the Court of Common Pleas, let alone an issue "identical" to one before us now. While Hayes and Holdings assert that collateral estoppel is warranted based on Kang Haggerty's position in the Court of Common Pleas that it would not pursue any portion of the NewSpring fund here, we can only apply collateral estoppel based on *issues* actually decided in a prior adjudication.[8] Accordingly, we conclude that the doctrine of collateral estoppel is inapplicable to Kang Haggerty's contractual claim for payment of the quantum meruit value of its services.

b. Judicial Estoppel

"The doctrine of judicial estoppel prevents a litigant from asserting a position that is inconsistent with one previously taken before a court or agency." United States v. Union Corp.,

---

[8] Moreover, Kang Haggerty's position in the Court of Common Pleas—that it would not seek any proceeds from the NewSpring settlement fund here—is irrelevant to its present claim for payment of the quantum meruit value of its services under the terms of the Termination Clause because the quantum meruit value of its services need not be paid from the NewSpring fund.

17

259 F. Supp. 2d 356, 391 (E.D. Pa. 2003) (citing Ryan Ops. G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 360 (3d Cir. 1996)). "Judicial estoppel is often applied where (1) a party adopts clearly inconsistent positions at different times, (2) it persuades a court to adopt the earlier position," and (3) "unfair prejudice" would result if the Court "adopted the later inconsistent position." Lincoln v. Smithfield, 595 F. App'x 143, 145 (3d Cir. 2014) (citing New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)). "[J]udicial estoppel is an extreme remedy, to be used only 'when the inconsistent positions are tantamount to a knowing misrepresentation or even fraud on the court.'" Chao v. Roy's Const., Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008) (quoting Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 324 (3d Cir. 2003)).

Hayes and Holdings argue that we should apply judicial estoppel here because Kang Haggerty's claim for payment of the quantum meruit value of its services in this case is inconsistent with the positions it took before the Court of Common Pleas that (1) its claims in this action were limited to recovery of "unpaid hourly fees and costs," and (2) it would not seek any proceeds from the NewSpring settlement fund here. (See Supp. to Mot. Ex. E at 43-44 of 46; Mot. Ex. F at 73 of 79.) Hayes and Holdings further argue that judicial estoppel is appropriate because the Court of Common Pleas relied upon Kang Haggerty's initial representations in (1) overruling Haines's preliminary objections to Kang Haggerty's complaint and (2) denying Haines's motion for a compulsory nonsuit. In support of their position, Hayes and Holdings cite the Court of Common Pleas Order overruling Haines's preliminary objections and Judge Powell's statement on the record that he would not grant Haines's request for a compulsory nonsuit. (See Mot. for Summ. J., Ex. X; Supp. to Mot. for Summ. J., Ex. E at 44 of 46.) Neither of these submissions, however, show that the Court of Common Pleas relied upon Kang Haggerty's prior representations in making these rulings. In both instances, the Court of Common Pleas merely stated its conclusion

18

without disclosing the legal or factual basis for its decision. Under these circumstances, we cannot conclude that the Court of Common Pleas adopted Kang Haggerty's earlier position and, accordingly, we cannot conclude that Kang Haggerty is judicially estopped from asserting an inconsistent position in the case before us now. Moreover, while we are troubled by Kang Haggerty's shifting positions, we find no basis to conclude that Kang Haggerty's inconsistencies "are 'tantamount to a knowing misrepresentation or even fraud on the court.'" Krystal Cadillac-Oldsmobile GMC Truck, Inc., 337 F.3d at 324 (citation omitted). Thus, we conclude that Kang Haggerty's claim for payment of the quantum meruit value is not barred by judicial estoppel.

## IV.    CONCLUSION

For the foregoing reasons, Hayes's and Holdings' Motion for Partial Summary Judgment is granted in part, denied in part, and dismissed as moot insofar as it seeks summary judgment on Kang Haggerty's claim for unjust enrichment which has been withdrawn. This action will proceed on Kang Haggerty's breach of contract claims for (1) payment of its outstanding invoices and (2) payment of the contingency fee element of the Engagement Letter insofar as it seeks the quantum meruit value of its services, as well as Hayes's and Holdings' counterclaims for breach of contract and breach of fiduciary duty. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.